RECEIVED
IN ALEXANDRIA, LA
FEB 12 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DERRELL HOLLAND,<br>           Plaintiff | CIVIL ACTION<br>No. 3:05-cv-1095 |
| versus | |
| INTERNATIONAL PAPER COMPANY<br>     EMPLOYEE PENSION PLAN<br>           Defendant | JUDGE ROBERT G. JAMES<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

This Employees Retirement Income Security Act ("ERISA") case, 29 U.S.C.1001 et seq., is referred to me by the district judge for Report and Recommendation. The case is ready for decision on briefs on the merits in accordance with the ERISA Case Order [Doc. 4, 13, 21].

### Facts

Claimant, Derrell Holland ("Holland"), was hired by International Paper Company ("IP") to work at the Louisiana Mill in Bastrop, Louisiana on August 4, 1966. During his thirty-seven years of employment, Holland held positions as a paper machine specialist, equipment operator, dispatcher and fire protection specialist. (Holland 41). On April 28, 2003, Holland suffered a myocardial infarction ("heart attack") and was hospitalized. He underwent a cardiac catheterization the following day and on June 4, 2003, he underwent a surgery for the implantation of a

pacemaker.

Holland was deemed unable to return to his position as a fire protection specialist due to the physical demands of the job. (Holland 62). Accordingly, he applied for Sickness and Accident benefits on May 8, 2003. (Holland 7). Holland qualified for thirty-nine (39) weeks of Sickness and Accident Benefits which he received through January 25, 2004. (Holland 285,301,308).

Holland also applied for disability retirement benefits on December 16, 2003 listing his disability as "heart attack, pacemaker, [emphysema], leaking heart valve and nerve damage in back, high blood pressure." (Holland 31). However, disability retirement benefits were denied on May 5, 2004 for failure to meet the definition of "totally and permanently disabled". (Holland 193-194). Holland appealed the determination on May 17, 2004, and on October 19, 2004 the denial of disability retirement benefits was upheld. (Holland 214-219,229,269-273). Accordingly, Holland filed the instant lawsuit.

## Standard of Review

In accordance with this court's standing ERISA Case Order, the parties agree that the Retirement Plan issued by defendant, IP, is an employee welfare benefit plan, as defined by the provisions of ERISA, and that this case is governed by ERISA and that all state law claims are preempted. The parties also have also stipulated that the Plan provides the administrator with discretionary

authority to interpret the provisions of the plan and to make findings of fact and determine eligibility for benefits. (Doc. Item 18). However, because the entity deciding the claim is the one paying the claim, the administrator is conflicted and the court will give a modicum less deference to the administrator's decisions. <u>Vega v. National Life Insurance Services, Inc.</u>, 188 F.3d 287, 299 (5th Cir. 1999).

### The Plan

#### Disability Retirement

> If you become disabled while employed by the company, you may be entitled to a disability retirement benefit under the Plan provided you meet the Plan's definition of "totally and permanently disabled" as determined by the plan administrator. To be considered "totally and permanently disabled," your disability must be a medically determinable physical or mental condition or a diagnosed terminal illness that keeps you from performing any employment for which you are considered qualified by education, training or experience and which is likely to be permanent for the rest of your life.
>
> You may commence your disability retirement benefit on the first day of the month following the maximum benefit period under the Sickness and Accident Plan (whether or not you were receiving benefits under the Sickness and Accident Plan), a 26-week period from the date you became disabled if your facility does not offer a Sickness and Accident Plan or, in case of terminal illness, the first of the month following the month in which you are determined to be totally and permanently disabled. (Plan 7-8).

#### Definitions

> 1.10 "<u>Benefit Schedule</u>" means one of the Benefit Schedules that are annexed to and form a part of the Plan specifying Accrued Benefits and Plan provisions applicable for specific groups of Employees. To the extent the terms of a Benefit Schedule and this Plan

conflict, the Benefit Schedule shall control. Except as provided specifically in a Benefit Schedule, the provisions of the Plan shall apply to the payment of benefits. (Plan 58).

1.17 "Disability" means, unless otherwise defined in a Benefit Schedule, a disability to the extent a Participant is permanently disabled by bodily injury or disease from performing the normal duties of his position, as determined by the Plan Administrator or his designee based on competent medical evidence satisfactory to substantiate such disability. (Plan 60).

1.18 "Disability Retirement Date" means, for each Participant, the Disability Retirement Date specified in the applicable Benefit Schedule upon which the Participant is determined to have a Disability. (Plan 60).

### Benefits

4.04 Disability Retirement Benefit

If a Participant has met the disability requirements (if any) set forth in the applicable Benefit Schedule, he shall be eligible for the Disability benefit set forth in the applicable Benefit Schedule commencing as of his Disability Retirement Date. (Plan 73).

### The Plan Benefit Schedule A-1

**"Disability"** or **"Disabled"** means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled...

**"Disability Retirement Date"** means the first day of the month subsequent to the Participant's exhaustion of Company-paid short term disability benefits or, if the Participant receives any other type of benefits for a disability instead of Company-paid short term disability

4

benefits (for example, Workers' Compensation benefits), the first day of the month subsequent to the date the Participant would have exhausted Company-paid short term disability benefits, had such benefits been paid, provided on such date the Participant is determined to be Disabled. Solely in the case of a diagnosed terminal illness, **"Disability Retirement Date"** means the first day of the month following the month in which the Participant is determined to be Disabled. (Plan 119-120).

## The Medical Records

The administrative record shows Holland suffered a heart attack on April 28, 2003, underwent a heart catheterization the following day and received a pacemaker on June 4, 2004. Holland submitted medical records from several doctors including Keith Calhoun, M.D., Emile Barrow, M.D., A. Mouhaffel, M.D., Robert Sarama, M.D., Carter Cox, M.D. and Scott Irby M.D.. (Holland 42-61, 68-98). IP submitted reports from two reviewing doctors, Richard Fraser, M.D., P.C. and Leonard Sonne, M.D., as well as the report of its independent medical examiner, Godfrey Achilihu, M.D. (Holland 214-218, 237-239, 243-251). Of particular interest are the records and reports from Drs. Calhoun, Sarama and Achilihu.

Dr. Calhoun, a general practitioner, treated Holland for various ailments including dizziness, cough, shoulder pain, and high blood pressure. The dates of all medical records submitted by Dr. Calhoun are subsequent to Holland's heart attack. Dr. Calhoun also completed several sections of Holland's Functional Assessment Form. (Holland 32-34,146-148). On the Functional Assessment Forms dated January 15, 2004, Dr. Calhoun noted that Holland: had "50-60%

decrease in endurance" since having a heart attack; in an eight hour day he could stand or walk 1 to 3 hours, sit 3-5 hours, lift a maximum of 10 to 20 pounds, use his hands for repetitive simple grasping and fine manipulation, reach above shoulder level, bend frequently and stoop and climb occasionally, but could not engage in repetitive lifting or repetitive pushing and pulling and was environmentally restricted from mechanical and/or electrical hazards.

On the Functional Assessment Form dated February 10, 2004, Dr. Calhoun noted Holland could stand and sit occasionally for short periods, climb stairs on a limited basis (but not ladders), lift 25 pounds rarely, bend and twist on a limited basis and walk an eighth to a half of a mile. (Holland 146-148). Dr. Calhoun did not attach x-rays or diagnostic test results to support his conclusions.

Dr. Sarama, a pulmonologist, examined Holland on at least two occasions. (Holland 53-55). In his office progress notes dated September 2, 2004, Dr. Sarama advised that he was treating Holland due to an abnormal Pulmonary Function Study performed by Dr. Irby on August 4, 2003. Dr. Sarama noted Holland was under no acute distress and had a significant degree of reversible airway damage. Accordingly, he would increase Holland's use of an inhaler and follow up to determine whether there was any improvement. When Holland returned a month later, Dr. Sarama noted that Holland advised he felt better, was less short of breath and could exert

himself. Dr. Sarama further noted that Holland was "actually rebuilding his shop".

In addition to his own doctors, Holland saw an independent medical examiner on September 16, 2004. Godfrey Achilihu, M.D., a board certified cardiologist, examined Holland at the request of the Plan during the appeal. Dr. Achilihu reported that Holland was a healthy looking man whose chest pain was atypical for angina. He noted that recent myocardial perfusion studies performed by Holland's physician, Dr. Barrow, were normal, and "from a cardiac standpoint [he did] not feel that Holland [met] the definition of total disability." Dr. Achilihu found Holland to be best suited for sedentary and/or light duty jobs which did not require excessive physical exertion or lifting more than 15 to 20 pounds on a frequent basis. (Holland 243-251).

### Review for Abuse of Discretion

"An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for denial.'" Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 342 (5th Cir. 2002). There must be "concrete evidence" in the administrative record that supports the denial of the claim. Id. The administrator's decision should be reversed only if it is arbitrary or capricious, that is, if the record lacks substantial evidence to support the Plan Administrator's benefit determination. See, Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d

211, 215 (5th Cir. 1999). See also, <u>Vega</u>, 188 F.3d at 299 (5th Cir. 1999).

At issue in this case is whether the Plan Administrator relied on the proper definition when determining that Holland was not totally and permanently disabled, and if so, whether the Plan Administrator properly determined that Holland's condition did not meet the definition.

The definition of "totally and permanently disabled", as relied upon by the Plan Administrator when denying Holland's claim, is contained in the Summary Plan Description. Holland argues that this definition is incorrectly relied upon because another less stringent definition of "disability" is set forth in the Plan and the Plan Summary clearly states that "[i]f there is any conflict between the information in the Summary Plan description and the provisions of the Plan Document, the Plan Document will always control." (Plan 3). While it is true that the Plan Document and the provisions therein should control, the fact is the definition of disability under the Plan specifically states that it does not apply when a benefit schedule defines disability.

In the instant case, Benefit Schedule A-1, which applies to the Louisiana Mill, defines disability in the same terms as the Summary Plan Description defines "totally and permanently disabled". That is, in order to meet the definition of disability, one must be unable to perform any employment for which he is

qualified by reason of education, training or experience. As this language mirrors that contained in the Plan Summary Description there is no conflicting definition. Thus, the Plan Administrator properly relied upon the definition of "totally and permanently disabled" when evaluating Holland's claim for disability retirement benefits.[1]

Holland argues in the alternative that even if the proper definition was relied upon, the Administrator abused his discretion in determining he possessed the education, training or experience to perform sedentary and/or light work[2] because the administrative

---

[1] Holland also argued that Benefit Schedule A-1 does not apply because it was not in effect at the time he suffered a heart attack. However, the Plan is clear that a disability retirement date commences on the first day of the month subsequent to the final payment of Sickness and Accident benefits. As Holland's Sickness and Accident benefits ceased January 25, 2004, his disability retirement date was February 1, 2004 and Benefit Schedule A-1 was in effect at that time. Even if claimant is correct in stating that the operative date was the date of his heart attack, the Benefit Schedule in effect at that time contained the same definition of disability. Accordingly, the Plan Administrator used the proper definition of disability to evaluate Holland's claim.

[2] The Dictionary of Occupational Titles ("DOT") provides: "S-Sedentary Work -Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all of the sedentary criteria are met. L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rates Light Work: (1) when it requires walking or standing to a

record does not contain evidence supporting such a conclusion. In response, IP argues that Holland possesses the experience to perform at least one light duty job which is that of dispatcher; a job he performed at IP from 2000 to 2002. Additionally, IP argues that the medical and occupational evidence supports a finding that Holland is not totally and permanently disabled. IP also argues that the Plan does not require the Administrator to identify specific positions for which Holland is qualified.

The Fifth Circuit has expressly held that "the burden [is not] solely on the administrator to generate evidence relevant to deciding the claim." Gooden v. Provident Life and Acc. Ins. Co., 250 F.3d 329 (5th Cir. 2001). As the Fifth Circuit explained in Vega v. National. Life Ins. Services., 188 F.3d 287 (5th Cir. 1999), "there is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain the information

---

significant degree; or (2) when it requires sitting most of the time be entails pushing and/or pulling of arm and leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force is negligible. Dictionary of Occupational Titles (4th ed.1991).

in the absence of the claimant's active cooperation." <u>Id.</u>

IP is correct in stating that the Plan does not require the Administrator to identify specific positions for Holland. However, the Administrator has a duty to show that there are jobs which Holland is qualified to hold by reason of education, training or experience. A reviewing court must, on a case by case basis, decide "whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert." <u>Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1309 (5th Cir. 1994).

In the instant case, three doctors opined as to Holland's ability to perform work. Specifically, Dr. Calhoun found Holland was able to perform sedentary work. Dr. Calhoun set forth specific physical limitations as well as the non-exertional limitation of being environmentally restricted from mechanical and/or electrical hazards on Holland. (R. 103). These limitations were relied upon and adopted by Dr. Fraser who reviewed the file on behalf of the Plan Administrator and determined that Holland could perform sedentary work within the listed restrictions. (R. 214-218). The only physician who determined that Holland could perform sedentary and/or light work was Dr. Achilihu. This determination was made in a short statement that Holland could perform sedentary and/or light duty work but he was restricted from excessive physical exertion and frequent lifting of more than 15 to 20 pounds. (R. 250). No

other comments were made regarding Holland's ability to sit, stand, walk, push, pull, etc.

While the medical evidence may show that Holland is capable of at least sedentary work with additional environmental restrictions, the occupational evidence in the record is minimal and does not reasonably support the Administrator's decision to deny benefits. While it is true that Holland did perform the light duty job of dispatcher from 2000 to 2002, the written testimony of IP's own Manager of Industrial Relations, Kevin P. Doherty, provides that "[a]ll positions at the Louisiana Mill for which Mr. Holland may be qualified are physically demanding jobs that require numerous types of exertions and frequently changing working conditions." Accordingly, at the least, there is a question as to whether the job of a dispatcher fits the true meaning of light work . Furthermore, it is unlikely that Holland would be able to perform the job of dispatcher, or any other job within IP, due to the environmental restriction that he not work around mechanical or electrical hazards.

Finally, other than this one dispatcher position within IP, there is no evidence of any sedentary and/or light duty jobs for which Holland is qualified by reason of education, training or experience outside of IP. The Administrator should have consulted a vocational rehabilitation expert to provide the answer as to what occupations, if any, Holland could perform in the sedentary and/or

light duty category given his education, training and experience and the additional limitation that he not work around mechanical or electrical hazards. The determination that Holland is qualified by reason of education, training or experience to perform sedentary and/or light work and thus is not totally disabled is not adequately supported by the evidence in the record.

### Conclusion

For the foregoing reasons, the Court finds, after reviewing the record and considering IP's dual role as claims payor and plan administrator, that the Administrator abused its discretion in determining Holland was not entitled to disability retirement benefits because the decision is not supported by substantial and concrete evidence and is thus arbitrary and capricious.

Accordingly, IT IS RECOMMENDED that Holland's claim be GRANTED. IT IS FURTHER RECOMMENDED that Holland be awarded retirement disability benefits, including past due benefits, and attorney's fees.

### OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or

request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 12th day of February, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE