UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DERRELL HOLLAND** | **CIVIL ACTION NO. 05-1095** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **RETIREMENT PLAN OF INTERNATIONAL PAPER CO.** | **MAG. JUDGE JAMES D. KIRK** |

**RULING**

Plaintiff Derrell Holland ("Holland") brought this lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against the Retirement Plan of International Paper Company ("Defendant" or "the Plan"), on the basis that he was denied disability retirement benefits.

**I. FACTS AND PROCEDURAL HISTORY**

Holland worked at International Paper's ("IP's") Louisiana mill in Bastrop, Louisiana, for over thirty-six years, where he held positions as a paper machine specialist, equipment operator, dispatcher, and fire protection specialist.

On April 28, 2003, Holland suffered a myocardial infarction ("heart attack") and was deemed unable to return to his position as a fire protection specialist because of the physical demands of the job. Accordingly, he applied for Sickness and Accident benefits on May 8, 2003. Holland qualified for thirty-nine weeks of Sickness and Accident benefits, which he received through January 25, 2004.

On December 16, 2003, Holland applied for disability retirement benefits, listing his disability as "heart attack, pacemaker, [emphysema], leaking heart valve[,] nerve damage in back,

[and] high blood pressure." (Holland, at p. 31).[1] Holland was denied disability retirement benefits by the Employee Services Center on May 5, 2004, because he did not meet the definition of "totally and permanently disabled." (Holland, at p. 193–194). Holland appealed the determination to the Plan's Disability Retirement Committee on May 17, 2004, and on October 15, 2004, the Committee upheld the denial of benefits.

Holland filed the instant lawsuit on June 22, 2005.

On February 12, 2008, Magistrate Judge James D. Kirk issued a Report and Recommendation [Doc. No. 28], recommending that the Court find that the Administrator of the Plan abused his discretion when he determined Holland was not entitled to disability retirement benefits. The Magistrate Judge recommended that Holland be awarded disability retirement benefits, including past due benefits and attorney's fees. In reaching this recommendation, the Magistrate Judge concluded that the Administrator's decision to deny benefits was not supported by substantial evidence and was thus arbitrary and capricious.

On March 3, 2008, Defendant filed objections [Doc. No. 29] to the Magistrate Judge's Report and Recommendation. Holland subsequently filed a response [Doc. No. 34], and Defendant filed a reply [Doc. No. 37].

On April 23, 2008, the Supreme Court outlined a new framework for determining whether a conflict of interest arises when an employer serves the dual role of administrator and insurer for an employer-sponsored plan subject to ERISA. *See Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008).

---

[1]The Record in this case is divided into two separately numbered sections, with one section called "Holland" and the other called "Plan." Accordingly, citations will be to either (Holland, at p. ___) or (Plan, at p. ___).

2

On July 11, 2008, the Court ordered the parties to brief the conflict of interest issue in light of the Supreme Court's decision in *Glenn* [Doc. No. 38]. Consistent with the Court's order, the parties submitted supplemental briefs [Doc. Nos. 39 & 40].

For the following reasons, the Court ADOPTS the Magistrate Judge's Report and Recommendation.

## II. LAW AND ANALYSIS

### A. Standard of Review

In *Glenn*, the Supreme Court outlined the framework that courts must follow when determining whether less deference should be applied to an administrator's decision because of an apparent conflict of interest. 128 S. Ct. 2343. Courts must first determine whether a plan's procedure for administering benefits creates a conflict of interest. *See id.* at 2348. Second, courts must consider whether and to what extent the conflict "should be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 2350.

Under the first step, *Glenn* held that a conflict of interest exists when an employer "both funds the plan and evaluates the claims." *Id.* at 2348. In these circumstances, according to *Glenn*, "every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket." *Id.* (quoting *Brunch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (3rd Cir. 1987), *aff'd in part and rev'd in part*, 489 U.S. 101 (1989)).

In *Glenn*, the administrator was a professional insurance company that charged the claimant's employer a fee for administering the plan and both evaluated and paid claims. The *Glenn* Court acknowledged that, unlike the situation where the employer both determines whether an employee is eligible for benefits and pay benefits out of its own pocket, "paying an individual claim does not

3

come to the same extent from the insurance company's own pocket." *Glenn*, 128 S. Ct. at 2349. Even so, the *Glenn* Court concluded that the procedure created a conflict for ERISA purposes because the employer could be biased in its selection of an insurance company. *Id.* at 2349–50. Specifically, the Supreme Court reasoned that an employer choosing an administrator in effect buys insurance for its employees "and . . . may be more interested in an insurance company with low rates than in one with accurate claims processing." *Id.* at 2350.

The *Glenn* Court next turned to the impact of the conflict of interest. The Supreme Court reasoned that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision," but "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* at 2351. The *Glenn* Court then held that the court of appeals correctly gave the conflict some, but not conclusive, weight in determining that the administrator abused his discretion by denying benefits. *Id.* at 2351–52.

In this case, Defendant objects that the Magistrate Judge erred in: (1) finding that the Administrator is conflicted because Defendant both evaluates and pays claims, and (2) therefore giving a modicum less deference to the Administrator's decision. Defendant argues that the Administrator is not conflicted because the Plan is funded by irrevocable, periodic payments made by Defendant into a trust. *See James v. La. Laborers Health & Welfare Fund*, 29 F.3d 1029, 1034 n.2 (5th Cir. 1994) (stating in dicta that no conflict of interest exists when the employer both evaluates and pays claims via a self-funded trust) (citing *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989)). In its supplemental brief, Defendant further argues that *Glenn* is distinguishable because Defendant does not receive a direct pecuniary benefit by denying a claim

4

for benefits.

Holland responds by alleging three bases for finding that a conflict exists: (1) the Administrator is also the Senior Vice President of Human Resources for IP; (2) the trust funds revert to IP if the trust is dissolved; and (3) Defendant must ensure the viability of the trust.

With respect to the alleged organizational conflict, Holland argues that the Vice President of IP's Human Resources Department is conflicted because he "is the person in charge of who remains at IP and who gets laid off—as well as who is entitled to disability." [Doc. No. 34, p. 14]. Holland has not offered evidence showing that the Administrator's personnel responsibilities affect his benefits decisions. *Cf. McClure v. Vice President, Human Res., Union Carbide Corp.*, No. H030054, 2005 U.S. Dist. LEXIS 35679, at *43–47 (S.D. Tex. 05/20/05) (finding a conflict of interest when the administrators of a severance plan were also responsible for ensuring the successful integration of the two businesses, which led the administrators to take into consideration their integration responsibilities when making benefits decisions). The Court therefore finds that no organizational conflict of interest exists.

With respect to the termination of the trust, the Plan specifically provides that the participants' rights to accrued benefits are nonforfeitable. (Plan, at p. 103). Thus, IP would only be entitled to the balance of the funds after all liabilities are satisfied. The hypothetical possibility that IP will receive some funds from the trust at an undetermined date in the future is insufficient to establish a conflict of interest.

With respect to the funding of the trust, Defendant argues that there is no inherent conflict of interest in this situation because the employer-administrator

> hold[s] no potential for any type of pecuniary benefit by denying [a] claim. The

5

> assets are held in trust for the sole and exclusive benefit of the [plan's] participants. The only conflict the trustees have is their legally recognized dual responsibility toward both the beneficiaries and the preservation of the corpus of the trust.

*James*, 29 F.3d at 1034 n.2 (citations omitted); *see also Brown v. Blue Cross & Blue Shield of Al., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991) (reasoning that "[b]ecause an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business"). However, the Supreme Court in *Glenn* made clear that a conflict of interest is not limited to those situations where a plan receives a direct pecuniary benefit by denying a claim for benefits. Like *Glenn*, Defendant's procedure for administering benefits still creates financial incentives to deny claims. The amount that Defendant contributes to the fund is not fixed and may change based upon the number of claims the Administrator pays. Accordingly, the more claims the Administrator pays, the greater the amount Defendant needs to deposit into the trust to ensure its financial viability. Thus, Defendant may be more interested in keeping the amount of its irrevocable contributions low than in ensuring accurate claims processing. The Court therefore finds that a financial conflict of interest exists for ERISA purposes based on Defendant's interest in maintaining the viability of the trust.

The Court notes that this conclusion is inconsistent with prior Fifth Circuit and other court of appeals precedent that distinguished trusts from other self-funded, employer-sponsored plans. In light of *Glenn* and the Supreme Court's willingness to find that a conflict exists in the absence of a direct pecuniary benefit, the Court declines to follow pre-*Glenn* precedent.

Having found that a financial conflict exists, the Court turns to the second step under *Glenn*: whether and to what extent the conflict "should be weighed as a factor in determining whether there

is an abuse of discretion." *Glenn*, 128 S. Ct. at 2350. The Magistrate Judge found that there was a minimum basis of conflict because "the entity deciding the claim is the one paying the claim" and evaluated the Administrator's benefits decision with a modicum less deference [Doc. No. 28, p. 3]. *See Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 343 (5th Cir. 2002) (applying a sliding scale to assess the potential impact of a conflict and holding that when a minimal basis for a conflict is established, the court reviews the decision with only a modicum less deference than it otherwise would). The Magistrate Judge's finding was made, however, without the benefit of the Supreme Court's decision in *Glenn*.

In its supplemental briefing, Defendant argues that the irrevocable funding of the trust eradicates any alleged conflict of interest to the "vanishing point." *See Glenn*, 128 S. Ct. at 2351 (noting that a conflict is less important when an administrator has "wall[ed] off claims administrators from those interested in firm finances").

Holland, however, argues that the conflict of interest is substantial, and the Magistrate Judge should have been even less deferential to the Administrator's decision. Specifically, Holland argues that it is likely that the Administrator's benefits decision was affected by the conflict because Defendant has a "track record" of denying claims incorrectly. *See id.* at 2351 (noting that a conflict likely affected the benefits decision "where an insurance company administrator has a history of biased claims administration"). In support of his contention, Holland points to two cases where courts have found that Defendant abused its discretion in denying benefits.

The Court disagrees with both parties' contentions. The Plan has existed since 1945 and funds the retirement benefits of thousands of participants at dozens of facilities. Two examples where Defendant abused its discretion does not establish a substantial conflict of interest. On the

7

other hand, it is not clear under *Glenn* that the conflict of interest should "vanish." While the irrevocable funding of the trust diminishes the importance of the conflict and the likelihood that it affected the Administrator's benefits decision, Defendant has not completely isolated benefits decisions from concerns regarding the viability of the trust. The Court therefore ADOPTS the Magistrate Judge's recommendation that a modicum less deference be given to the Administrator's decision. In the alternative, the Court finds that even if full deference is given to the Administrator's decision, the Administrator abused his discretion, as explained below.

**B.     Denial of Benefits**

Defendant objects that the Magistrate Judge erred in finding that the Administrator abused his discretion when he determined that Holland was not entitled to disability retirement benefits. Defendant argues that the Administrator did not need to consult a vocational expert because the medical evidence alone was sufficient to establish that Holland was qualified and capable of performing some jobs.

The Magistrate Judge correctly determined that to qualify as disabled under the Plan, Holland must be "incapable of performing any occupation or employment for which [he] is qualified by education, training or experience." [Doc. No. 28, p. 9]. According to the Magistrate Judge, the Administrator abused his discretion when he determined, without consulting a vocational expert, that Holland is qualified to perform sedentary and/or light work and thus is not totally disabled. The Magistrate Judge reasoned that "[t]he Administrator should have consulted a vocational rehabilitation expert to provide the answer as to what occupations, if any, Holland could perform in the sedentary and/or light duty category given his education, training and experience and the additional limitation that he not work around mechanical or electrical hazards." [Doc. No. 28, p. 13].

A defendant need not consult a vocational expert before every disability determination. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994). Sometimes the medical evidence alone is sufficient to establish that a claimant does not meet the plan's definition of disability. *Id.* "The reviewing court [should] decide, on a case-by-case basis, whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert." *Id.*

In *Duhon*, the definition of disability was similar to the case *sub judice*: to qualify as disabled, the claimant must be "[unable] to perform any job for which he or she is, or may become, qualified by training, education, or experience." *Id.* The plaintiff was unable to return to his prior work as a truck driver because of his degenerative back condition, but the medical evidence indicated that he was "able to perform 'sedentary to light work.'" *Id.* at 1308. In light of this evidence, the *Duhon* Court reasoned that

> [i]t was not an abuse of discretion for the plan administrator to conclude that a sixty-five year old man with a high school diploma and plenty of experience in the work-a-day world, although unable to squat, stoop, bend, or lift more than twenty-five pounds, would be able to perform the functions of some identifiable job. Indeed, to find otherwise would be blindly and deliberately to ignore a common—and uncontested—truth: people in their sixties and seventies who have similar physical and job limitations established by this record are employed and employable throughout the workplace today.

*Id.* Because the available evidence indicated that the plaintiff was "capable of performing some type of occupation," the Court held that it was not an abuse of discretion for the plan administrator to conclude that he was not disabled without obtaining the opinion of a vocational rehabilitation expert. *Id.* at 1309 (citing *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1455 (D.C. Cir. 1992)).

Similarly, in *Block*, then-Judge Ginsburg held that the plan administrator could competently

determine the plaintiff was not disabled without vocational testimony because the plaintiff's limitations on standing (two hours), walking, lifting (20 pounds), and bending (four out of eight hours), "were not so great" nor his prior occupation as a sales representative "so specialized" that he would not be qualified for any job. 952 F.2d at 1455.

Unlike *Duhon* and *Block*, Holland has worked almost exclusively in heavy, labor intensive work for over thirty years, which indicates that his skills are not transferable.[2] The severity of his medical and environmental restrictions also distinguish this case from *Duhon* and *Block*. Holland's treating physician, Dr. Calhoun, indicated that Holland was "totally disabled, so as to prevent him . . . from engaging in any occupation and performing any work for compensation or profit[.]"[3] (Holland, at p. 33). Dr. Fraser, one of Defendant's medical reviewers, similarly concluded that Holland was capable of sedentary work with the restrictions that he stand or walk for 1 to 3 hours, sit 3 to 5 hours, lift no more than 10 to 20 pounds infrequently, use his hands for repetitive simple grasping and fine manipulation but not for pushing and pulling, and avoid mechanical and electrical hazards. (Holland, at p. 217). Defendant's other reviewer, Dr. Sonne, concluded only that "there is insufficient documentation to substantiate disability as defined by the Plan language," but did not

---

[2]There is evidence that Holland worked briefly as a dispatcher for two years, which he classified as a light duty job at IP. (Holland, at p. 41). Although the dispatcher job may have been considered light duty by Holland's standards, IP's Manager of Industrial Relations, Kevin P. Doherty, explained that "[a]ll positions at the Louisiana Mill for which Mr. Holland may be qualified are physically demanding jobs that require numerous types of exertions and frequently changing working conditions." (Holland, at p. 61).

[3]Defendant argues that Dr. Calhoun's conclusion that Holland is totally disabled is inconsistent with his assignment of a Class III impairment, which indicates that Holland is capable of light work. However, Dr. Calhoun ultimately concluded that Holland was incapable of light work. The Court therefore does not consider Dr. Calhoun's assessment to be internally inconsistent.

explain or justify his conclusion. (Holland, at p. 238). Although all of Defendant's medical reviewers concluded that Holland was capable of performing some occupation, none indicated what kinds of jobs Holland was capable of performing. Furthermore, one of Defendant's reviewers, Dr. Achilihu, recommended that Holland "undergo rehabilitation or vocational rehabilitation for an alternative job that he can perform within [his] restrictions." (Holland, at p. 251). Given Holland's undisputed restrictions[4] and Dr. Achilihu's recommendation, the Court finds that the Administrator could not have competently determined that there were jobs for which Holland was qualified by education, training, or experience without consulting a vocational expert.[5] The Administrator's conclusion that Holland is not disabled is not supported by substantial evidence and is thus arbitrary and capricious.

For these reasons, and after reviewing the record for abuse of discretion, the Court ADOPTS the Magistrate Judge's recommendation that the Administrator abused his discretion by failing to award benefits. The Court further ADOPTS the Magistrate Judge's recommendation that Holland be awarded retirement disability benefits, including past due benefits. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 302 (5th Cir. 1999) ("If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion

---

[4]Dr. Achilihu's recommended restrictions, that Holland avoid excessive physical exertion and limit his lifting to no more than 15 to 20 pounds on a frequent basis, was based on Holland's cardiac condition only. (Holland, at p. 250).

[5]Holland further argues that the Administrator should have considered the impact of stress on his ability to work and a favorable Social Security Administration ("SSA") ruling on his application for long-term disability benefits. Holland has not pointed to any evidence in the administrative record regarding stress as an additional restriction. The SSA ruling was submitted after Holland's appeal was denied and thus is not part of the administrative record. Accordingly, the Court did not consider this evidence. *See Horton v. Prudential Ins. Co. of Am.*, No. 02-30439, 2002 WL 31415104, at *3 (5th Cir. 10/08/02).

on the part of the administrator, award the amount due on the claim and attorneys' fees.").

C. **Attorney's Fees**

Defendant objects to the Magistrate Judge's recommendation that the Court award attorney's fees without first analyzing the *Bowen* factors.

In the Fifth Circuit there is no presumption in favor of awarding attorney's fees and costs in an ERISA case. *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995). Rather, the district court is generally required to consider and explicate the so-called *Bowen* factors, which include:

(1) the degree of the parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

In this case, the Court finds that Defendant is capable of satisfying an award of attorney's fees; an award of attorney's fees against Defendant will deter other persons from denying benefits under similar circumstances; and Holland presented a significant legal question regarding ERISA. Having balanced each of these factors, the Court ADOPTS the Magistrate Judge's recommendation to award attorney's fees.

The Court refers this matter to the Magistrate Judge for a report and recommendation on the appropriate amount of attorney's fees to be awarded under a lodestar analysis. *Lain*, 279 F.3d at

347–48.

### III. CONCLUSION

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and Recommendation [Doc. No. 28]. The Court finds that the Administrator abused his discretion by failing to award disability retirement benefits. Because the Administrator abused his discretion, Holland's appeal of the denial of disability retirement benefits is GRANTED, and Holland is awarded disability retirement benefits, including past due benefits.

Finally, the Court awards attorney's fees and costs to Holland. This case is referred to the Magistrate Judge for a report and recommendation on the appropriate amount of attorney's fees to be awarded under a lodestar analysis.

MONROE, LOUISIANA, this 4th day of September, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE